# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JAMES A. MILLER ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **No. 15-1049** |
| **MARINE SPILL RESPONSE CORPORATION ET AL.** | **SECTION I** |

## ORDER AND REASONS

Before the Court is a motion[1] in limine filed by defendant, Clean-Co Systems, Inc. ("Clean-Co"), to exclude proposed expert testimony by Dr. G. Randolph Rice ("Dr. Rice") concerning plaintiff, James Miller's ("Miller"), work-life expectancy and future lost earnings. Miller opposes the motion.[2] For the following reasons, Clean-Co's motion is deferred until trial.

## BACKGROUND

Miller filed this lawsuit under the Jones Act and general maritime law seeking damages for injuries that he allegedly sustained during his employment as a seaman onboard the OSRV GULF COAST RESPONDER, a vessel owned and operated by defendant, Marine Spill Response Corporation ("MSRC").[3] Miller asserts that on April 7, 2014, he suffered a work-related accident in which a pressurized hose attached to the vessel became detached and struck his left leg, gravely injuring the leg and other body parts and causing him permanent disability.[4] Miller further alleges that Clean-Co was under contract with MSRC at the time of the accident for the supply of

---

[1] R. Doc. No. 63.
[2] R. Doc. No. 65.  Clean-Co then filed a reply. R. Doc. No. 68.
[3] R. Doc. No. 1, at 3.
[4] *Id.*

1

decontamination equipment and/or services on the vessel and, therefore, Clean-Co is liable for damages resulting from the accident.[5]

For purposes of calculating damages, Miller has retained an expert economist, Dr. Rice, to provide testimony regarding plaintiff's work-life expectancy and lost earnings resulting from his disability.[6] According to his expert report, Dr. Rice will testify that Miller, who was 69 years old at the time of the accident and is currently 71 years of age, has a work-life expectancy of 3.17 years from the date of trial based on the statistical averages provided by the U.S. Department of Labor's Bureau of Labor Statistics.[7] Because plaintiff intends to present evidence that he would have worked longer than 3.17 years, Dr. Rice includes in his expert report lost wage calculations for a work-life expectancy extending to age 80.[8] Clean-Co moves to exclude from trial any testimony regarding lost earnings beyond 3.17 years on the ground that, other than his own testimony, plaintiff has offered no evidence to support an extended work-life expectancy which is insufficient as a matter of law to override the statistical averages.[9]

**STANDARD OF LAW**

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993); *United States v. Hitt*, 473 F.3d 146, 148 (5th Cir. 2006). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

---

[5] R. Doc. No. 26, at 2.
[6] R. Doc. No. 63-2.
[7] *Id.* at 1-2.
[8] *Id.*
[9] R. Doc. No. 63, at 5.

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

"To qualify as an expert, 'the witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth.'" *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004) (quoting *United States v. Bourgeois*, 950 F.2d 980, 987 (5th Cir. 1992)). Additionally, Rule 702 states that an expert may be qualified based on "knowledge, skill, experience, training, or education." *Hicks*, 389 F.3d at 524; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (discussing witnesses whose expertise is based purely on experience). "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) (quoting *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)). However, "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Id.*; *see Daubert*, 509 U.S. at 596.

The U.S. Supreme Court's decision in *Daubert* "provides the analytical framework for determining whether expert testimony is admissible under Rule 702." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002). Both scientific and nonscientific expert testimony is subject to the *Daubert* framework, which requires trial courts to make a preliminary assessment to

"determine whether the expert testimony is both reliable and relevant." *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004); *see Kumho Tire*, 526 U.S. at 147.

A number of nonexclusive factors may be relevant to the reliability inquiry, including: (1) whether the technique has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community. *Burleson*, 393 F.3d at 584. The reliability inquiry must remain flexible, however, as "not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004); *see Runnels v. Tex. Children's Hosp. Select Plan*, 167 F. App'x 377, 381 (5th Cir. 2006) ("[A] trial judge has 'considerable leeway' in determining 'how to test an expert's reliability.'"). "Both the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under [Rule] 702." *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000).

## ANALYSIS

Clean-Co does not challenge Dr. Rice's qualifications to provide expert testimony, nor does it dispute using a 3.17 year work-life expectancy as a basis for calculating plaintiff's future lost earnings.[10] Instead, Clean-Co moves only to exclude Dr. Rice's calculations of plaintiff's lost wages beyond the statistical average, alleging that any testimony to that effect would be unreliable

---

[10] R. Doc. No. 63, at 2.

as plaintiff does not proffer sufficient evidence that he would be capable of working for a longer time period.[11]

In *Culver v. Slater Boat Co.*, the U.S. Fifth Circuit Court of Appeals set forth the recognized methodology for calculating future lost earnings in maritime cases. 722 F.2d 114 (5th Cir. 1983) (en banc). The four-step process outlined in *Culver* requires: (1) estimation of the loss of work life resulting from the plaintiff's injury; (2) calculation of the plaintiff's lost income stream; (3) computation of the total amount of damages; and (4) discounting the total amount to its present value. *Id.* at 117. When applying this methodology, "[courts] must remember that the ultimate total damage figure awarded is the sum of a series of predictions, none of which involves mathematical certainty, and that it is the reasonableness of the ultimate figure that is really in issue in such a case as this." *Id.* at 121. The Court further notes that "[t]he paramount concern of a court awarding damages for lost future earnings is to provide the victim with a sum of money that will, in fact, replace the money that he would have earned." *Id.* at 120.

The first step of the *Culver* process is at issue here. With regard to that step, the Fifth Circuit has established that work-life expectancy in maritime injury suits should be determined using statistical averages in the absence of evidence supporting a deviation. *Madore v. Ingram Tank Ships, Inc.*, 732 F.2d 475, 478 (5th Cir. 1984). As the Court explained in *Madore*: "Such an average is not conclusive. It may be shown by evidence that a particular person, by virtue of his health or occupation or other factors, is likely to live and work a longer, or shorter, period than the average. Absent such evidence, however, computations should be based on the statistical average." *Id.*; *see also Randolph v. Laeisz*, 896 F.2d 964, 968 (5th Cir. 1990) (same).

---

[11] R. Doc. No. 63-1, at 5-6.

"Self-serving" testimony by the plaintiff that he "intended" to work beyond the statistical norm is insufficient by itself to demonstrate by a preponderance of the evidence that the plaintiff is likely to live and work longer than the average. *See Naquin v. Elevating Boats, LLC*, No. 10-4320, 2012 WL 1664257, at *6 (E.D. La. May 11, 2012) (Barbier, J.) (citing *Lambert v. Teco Barge Line*, No. 06–2390, 2007 WL 2461681, at *3 (E.D. La. Aug. 23, 2007)). In *Barto v. Shore Const., L.L.C.*, for example, the Fifth Circuit observed:

> [The plaintiff]'s economist did not provide any reason to believe that [he] would continue to work past his statistical work-life expectancy. The only relevant evidence [the plaintiff] presented at trial was his testimony that he plans to work "[a]s long as I can retire. Whatever the retirement age is." This scant evidence was not enough to show that [he] "by virtue of his health or occupation or other factors, is likely to live and work a longer, or shorter, period than the average." *Madore*, 732 F.2d at 478.

801 F.3d 465, 475 (5th Cir. 2015). Accordingly, expert testimony predicated only on the plaintiff's mere subjective belief or unsupported speculation regarding future lost earnings should be excluded. *Lewis v. Seacor Marine, Inc.*, No. 02-116, 2002 WL 34359733, at *2 (E.D. La. Oct. 23, 2002) (Engelhardt, J.); *Lambert*, 2007 WL 2461681, at *3.

On the other hand, calculations of future lost earnings beyond the average may proceed to trial where the plaintiff expresses an intention to introduce suitable evidence at trial and where the record might conceivably support the introduction of such evidence. *See Naquin*, 2012 WL 1664257, at *6. In the present case, as in *Naquin* (another case in which Dr. Rice was the plaintiff's expert), Dr. Rice has calculated lost wages for a work-life expectancy beyond the statistical average in the event that the factfinder concludes that Miller's work life likely would have exceeded that average. He does not personally opine that Miller's work-life expectancy likely would have surpassed 3.17 years from the date of trial, and Clean-Co argues that Miller therefore

6

"has no reliable or admissible evidence that he would have worked for a longer period of time."[12] Nevertheless, based upon the record before it, this Court cannot definitively state that there is no chance Miller will be able to introduce trial evidence regarding his health, occupation, or other factors that would support a jury finding that he is a statistical outlier and that he is, therefore, entitled to beyond-average lost earnings.

As Miller argues in his brief, he worked until retirement age in the menhaden industry at which point he began drawing social security. Despite his receipt of those benefits, he continued to work as a self-employed oyster fisherman before working for MSRC. Before the accident, Miller was allegedly in excellent health and he had obtained a job that he enjoyed which required only medium exertional demands.[13] In addition, there is evidence that only shortly before the accident, Miller had obtained additional training, expanded the scope of his U.S. Coast Guard license, and started a new job working for MSRC.

Plaintiff's proposed vocational rehabilitation expert, Thomas Meunier, LPC, stated in his expert report that "Mr. Miller presented in a very positive fashion, and [that plaintiff] appeared to be a very motivated individual with a very strong work ethic. His personnel records reflect above average evaluations by his employer[] with a number of certificates of training documented in the file."[14]

---

[12] R. Doc. No. 63-1, at 6.

[13] Plaintiff further argues that "[t]he job [working for MSRC] was a perfect retirement job. Mr. Miller worked close to his house, and he was home every afternoon and on weekends. It satisfied his need to keep busy without the rigors of his career as a pogey fisherman. Even at the age of 68 (at the time of the accident), the notion that Mr. Miller would continue to work such a rewarding, yet low-impact job well into his seventies and potentially into his eighties is not unreasonable." R. Doc. No. 65, at 4.

[14] R. Doc. No. 65-1, at 2.

In short, Miller argues that he was not a typical 69-year-old. While this Court does not now hold that this evidence is sufficient to support a finding that Miller's work life probably would have exceeded the statistical average, neither is the Court prepared to reject that possibility outright. Assuming it is not based merely upon "self-serving" evidence of plaintiff's own intentions regarding retirement and that a proper evidentiary foundation is established at trial, Dr. Rice will be permitted to testify regarding Miller's future lost wages beyond the average work-life expectancy and Clean-Co may cross examine Dr. Rice with respect to this issue.

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that defendant's motion in limine to exclude Dr. Rice's expert testimony is **DEFERRED UNTIL TRIAL**.

New Orleans, Louisiana, July 25, 2016.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**